952 F.2d 398
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony Staffon TURNER, Defendant-Appellant.
 No. 91-5273.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 30, 1991.
Decided Dec. 26, 1991.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Statesville. (CR-90-22-ST), Graham C. Mullen, District Judge.
 Argued: Harold Johnson Bender, Bender & Matus, Charlotte, N.C., for appellant; William A. Brafford, Assistant United States Attorney, Charlotte, N.C., for appellee.
 On Brief: Thomas J. Ashcraft, United States Attorney, David A. Graham, Assistant United States Attorney, Charlotte, N.C., for appellee.
 W.D.N.C.
 AFFIRMED.
 Before DONALD RUSSELL and HAMILTON, Circuit Judges, and JANE A. RESTANI, Judge, United States Court of International Trade, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant appeals from an Order entered on December 6, 1990 in the United States District Court for the Western District of North Carolina, denying its motion to suppress evidence obtained during a search. A magistrate judge heard evidence and arguments on this motion and on November 9, 1990, filed a Memorandum and Recommendation that the motion be denied. Following appellant's objection to this Memorandum and Recommendation, the district court conducted a de novo review of the record in this case. The district court accepted and adopted the magistrate judge's recommendation that the motion be denied.[1]
 
 
 2
 The issue on appeal is whether there was sufficient suspicion to justify an investigatory stop in this case.
 
 I.
 
 3
 On December 28, 1989, Special Agent Mark Welch of the North Carolina State Bureau of Investigation and Sergeant Dan Carlsen of the Hickory, North Carolina, Police Department drove to the Fourth Avenue Southwest area of Hickory in order to investigate illegal drug activity. Both men were familiar with the area and its reputation as an area where crack cocaine and cocaine were distributed. The officers pulled into the parking lot of Pat's Pool Room in their unmarked police vehicle[2] and saw approximately twenty-five males and possibly a few females standing on the west side of the Pat's Pool Room.
 
 
 4
 Sergeant Carlsen testified that defendant was watching his partner "very sternly ... watching every move that Agent Welch ... made ..." Appendix ("App.") at 34.[3] After the officers got out of their car, they observed appellant turn quickly away and walk rapidly to the door of the pool room. Carlsen followed appellant into the pool room and Welch followed a few seconds later. Carlsen then approached appellant and said "Hey, how you doing?" Appellant kept his face hidden from Carlsen, and did not respond.[4] Carlsen then said "Would you mind emptying your pockets?" Appellant did not respond verbally, but started to empty his pockets. Carlsen patted down the surface of his left front pants pocket. Carlsen testified that he was looking for "weapons or drugs." App. at 39. Appellant removed something from his right front pocket and tried to keep it from Carlsen by tossing it from hand to hand. Appellant put the object into a pocket on the pool table.
 
 
 5
 Welch had remained in the back of the pool hall as Sergeant Carlsen approached Turner. He could not hear what was said, but saw appellant empty some items onto the pool table and hold his left hand out in a fist away from Carlsen. As appellant reached forward onto the pool table, his jacket rode up on his back and Welch saw a gun in his waistband. Welch removed the gun, telling Carlsen that appellant had a gun.
 
 
 6
 Appellant was then arrested for carrying a concealed weapon. The canister appellant had removed from his right pocket and placed in the pocket of the pool table was found to contain crack cocaine.
 
 II.
 
 7
 On appeal the primary issue is whether the stop and anticipated frisk was constitutional under Terry v. Ohio, 392 U.S. 1 (1968).[5] In Terry, the Supreme Court recognized that a police officer may approach a person for the purpose of investigating possibly criminal behavior. Id. at 22-23. In connection with making this reasonable investigatory stop, the policeman may conduct a limited protective search for concealed weapons. Id. at 24. The question in this case is whether Carlsen was entitled to conduct a Terry stop under the facts of this case. In other words, did the officers have a reasonable suspicion to stop and would they have had a reasonable suspicion to search appellant for weapons.
 
 
 8
 Appellant argues that the officers stopped and searched him only because he walked away from them in a neighborhood known for drug-trafficking. The facts of the case as stated in the testimony of the two officers do not support this simple assertion. Immediately before Carlsen performed the search, he noted several things which he claimed gave him reasonable suspicion: (1) the area where the group had congregated was notorious as a place of drug distribution and violence; (2) appellant, a member of a group of men gathered outside a pool hall at night, had watched Agent Welch in a "stern" manner (apparently this was something out of the ordinary to the officer and indicated a serious interest in what the police might do); (3) after both officers exited their vehicle appellant quickly went into the pool hall, away from the officers; and (4) when Sergeant Carlsen approached him in the pool room, appellant furtively hid his face and refused to respond to a general greeting. The question on appeal is whether these factors can coalesce to form a reasonable suspicion under Terry to justify a stop.
 
 
 9
 This is not, as appellant alleges, a case where the only suspicious thing appellant did was gather with friends in a neighborhood known for drug-trafficking. This is a case where Sergeant Carlsen observed several factors which prompted him to become suspicious of appellant and worry that appellant might possess a weapon. The hasty exit, worried glances at the two officers, and the attempt to hide his face combined with the knowledge that drugs were often sold in the area and that violence was not uncommon there, are all factors which could arouse a reasonable suspicion in a seasoned police officer. In fact, courts of appeal have held that factors such as these should be considered in examining whether a Terry stop is justified. See United States v. Espinosa, 827 F.2d 604, 608-09 (9th Cir.1987), cert. denied, 485 U.S. 968 (1988) (suspect quickly walked away from officers in an area known for drug trafficking); United States v. Holland, 510 F.2d 453 (9th Cir.), cert. denied, 422 U.S. 1010 (1975) (suspects stared at officers for an unusually long time as officers were executing search warrant); United States v. Tate, 648 F.2d 939 (4th Cir.1981) (attempt by suspects to hide their faces from detectives). On the facts of this case, the Terry predicate of reasonable suspicion was met.
 
 III.
 
 10
 Once the Terry stop is justified, the police may conduct a limited search of the person for any weapons. Sergeant Carlsen was therefore justified in patting down appellant's pockets and having him remove possible weapons from his pockets. Once Agent Welch saw the gun, it was entirely proper for him to remove it. The magistrate judge and district judge found that since Sergeant Carlsen was entitled to conduct a pat down search of appellant for weapons, the search clearly and inevitably would have disclosed the revolver, would have led to his arrest for carrying a concealed weapon, and would have led to discovery of the cocaine during a lawful search incident to arrest. This reasoning is sound. Accordingly, the district court's decision is affirmed.
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 After the motion was denied, appellant signed a plea agreement in which he pleaded guilty to a single count of using and carrying a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c). Subsequently, appellant was sentenced to five years imprisonment
 
 
 [2]
 Although neither of the men was in uniform, Sergeant Carlsen was wearing a jacket and cap which identified him as a police officer
 
 
 [3]
 Carlsen further stated that "[i]t just wasn't like he was looking at him and then look away. He was watching every move that Agent Welch had made and I saw it." App. at 34
 
 
 [4]
 Sergeant Carlsen did not recognize appellant at this time, but later found out that he had been in the same room as appellant for about an hour after an earlier arrest on November 28, 1989. Carlsen stated that he believed that at the time of the arrest appellant probably recognized him from their earlier encounter
 
 
 [5]
 Both the magistrate judge and the district court determined that the search which took place after Carlsen stated "Would you mind emptying your pockets?" was not consensual. This issue is not before the court on appeal